RIDDELL *v.* GREAT ATLANTIC & PACIFIC TEA CO.

(*Knoxville,* September Term, 1950.)

Opinion filed June 16, 1951.

CHAMBLISS, CHAMBLISS & BROWN, of Chattanooga, for plaintiff in error.

WHITAKER, HALL & HAYNES, of Chattanooga, for defendant in error.

MR. JUSTICE PREWITT delivered the opinion of the Court.

Certiorari has been granted and the cause heard.

This is a personal injury suit resulting in a jury verdict and judgment thereon in the Circuit Court in favor of the defendant. The Court of Appeals reversed for alleged erroneous instructions to the jury. The plaintiff, Mrs. Riddell, was the injured party and was seventy-

three years old at the time of the injury which she sustained when she fell and broke her hip while walking on defendant's parking lot next to one of its store buildings on McCallie Avenue in Chattonooga. Her declaration charged that the parking lot was maintained in connection with the defendant's store and that plaintiff, being a customer and invitee, stepped into a depression that was negligently permitted by defendant to remain upon the lot, and that she was permanently injured. The defendant pleaded not guilty and contributory negligence. At the close of the plaintiff's proof, the defendant moved for a directed verdict which was overruled by the court. No proof was introduced by the defendant and the case was submitted to the jury, which returned a verdict for the defendant.

On the date Mrs. Riddell was injured, she went to the defendant's store in her automobile to purchase some groceries. A Mr. McCallie drove her car and she was also accompanied by a Mrs. Davidson, a friend. The car was parked by the driver on the regular parking lot of the defendant for the use of its customers. This lot was located on the west side of the store building which fronts on McCallie Avenue, and runs north and south. There was a narrow concrete walkway on the west side of the store. Cars were usually parked diagonally to the walkway with the front wheels a foot or more away. Plaintiff's car was parked in this position with the right front wheel near the edge of the depression. The surface of the parking lot was of tar and gravel and was smooth except for the depression into which the plaintiff fell. The hole was described as being from five to six feet square and ranging in depth from three to six inches. This depression was caused by the tires of automobiles sinking into the ground which had become soft from a

water seepage just under the surface. The depression had been there for about sixty days and was rough from indentations made by the tires.

After the plaintiff and her companions came out of the store with her groceries, they came back to the car. Mr. McCallie went immediately to the driver's side and placed some groceries on the back seat. Mrs. Riddell was carrying her handbag and a package of groceries in her arms. As Mrs. Davidson stepped out from behind Mrs. Riddell to open the right front door of the car, Mrs. Riddell stepped off the walkway into the depression and fell. Mrs. Riddell testified that she did not know the depression existed until she stepped into it; that she was wearing bifocal glasses and could not see very well looking downward.

Mr. Rutland, supervisor of defendant's store, was called as a witness by the plaintiff. He described the depression at its deepest point as "approximately three inches", and in response to a question as to whether or not a person could walk safely through it, he replied: "I wouldn't say so, sir . . . it was rough. It could be walked over easy enough providing you were watching where you were walking."

Mr. McCallie and other witnesses for the plaintiff testified that the depression ranged from three to six inches and Mrs. Davidson testified that the depression was very rough. Both Mr. McCallie and Mrs. Davidson testified that they saw the depression on getting out of the car when they first arrived.

█ It is to be noted that the plaintiff introduced her proof, and following this, the defendant moved for a directed verdict, which was overruled. The case went to a jury and that body returned a verdict in favor of the defendant. It is evident that the jury came to the conclu-

sion that Mrs. Riddell's own contributory negligence was responsible for the injury. It seems that plaintiff's principal complaint was with reference to defendant's requests Nos. 3 and 7 which the trial court gave to the jury. This request was as follows: "Now, gentlemen, you cannot base your verdict on speculation or conjecture, and before the plantiff is entitled to recover, you must find that she fell, or was injured, by stepping into the hole, or depression, set out and described in the declaration."

In his general charge to the jury, the court said: ". . . if she had defective vision, it would have been her duty to have exercised reasonable care, considering that such care as would have been expected of an ordinarily prudent person with such defective vision. In other words, it was her duty to have exercised that degree of care and precaution as would have been expected of an ordinarily prudent person in her condition there at the time and place and under all existing circumstances, and if she failed to do that she'd be guilty of negligence."

Granting defendant's request No. 7, the court further charged the jury as follows: "The Court will charge you, Gentlemen of the jury, that if you find that the plaintiff had defective vision that she would be required to exercise a degree of care commensurate with the condition of her eyesight. In other words, she would have to exercise such degree of care as would be expected of an ordinarily prudent person with such defective eyesight, if you find that she had such defective eyesight, which would be a greater care than one in full possession of the faculty of sight."

The court refused the following request submitted by the plaintiff: "It was the duty of the defendant, A & P, to keep its premises in a reasonably safe condition so that

persons with eyes more or less dimmed by age could see and avoid danger.''

We cannot agree with the Court of Appeals that in granting these special requests, the trial judge over-emphasized the theory of the defendant.

 It is well settled that a person must exercise an ordinary and reasonable amount of care for his own protection. And it is also well settled in the state that where persons have defective vision, they should use greater care in proportion to the dangers to which men are constantly exposed than is required of those in full possession of the faculty of sight. *Stewart* v. *City of Nashville,* 96 Tenn. 50, 33 S.W. 613.

The question presented here is not so much whether the depression was an act of negligence as whether it could be said that the contributory negligence was the cause of the injury. Evidently the jury came to the conclusion that her own negligence was the cause of her fall.

 The law is well settled in the state that mere forgetfulness of danger does not excuse contributory negligence. *City of Knoxville* v. *Cox,* 103 Tenn. 368, 53 S.W. 734.

 A recovery will not be allowed because of the existence of trivial holes or depressions. *Rye* v. *City of Nashville,* 25 Tenn. App. 326, 156 S. W. (2d) 460.

 No doubt the jury came to the conclusion that Mrs. Riddell could have walked through the depression in safety provided she was watching where she was walking.

It results that the judgment of the Court of Appeals must be reversed and that of the trial court must be affirmed at the cost of the original defendant.

All concur.